UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

BYRON K. BROWN,                                    :

                Plaintiff,                     :

v.                                                                    :

                                             :

ANTHONY ANNUCCI; MICHAEL CAPRA;          :          **OPINION AND ORDER**

F. CARABALLO; J. AYALA; S. AMARO; V.       :

YOUNG; K. GREEN; T. BOWEN; M.                :          19 CV 9048 (VB)

BARNES; M. ROYCE; D. VENETTOZZI; L.       :

MALIN; J. DECKELBAUM; CARLOS J.            :

RODRIGUEZ; and LERVIS MEREJO,            :

                Defendants.                :

-------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Byron K. Brown, proceeding pro se and in forma pauperis, brings this action

pursuant to 42 U.S.C. § 1983 against defendants Acting Commissioner ("Comm'r") Anthony

Annucci, Superintendent ("Supt.") Michael Capra, Registered Nurse ("R.N.") V. Young, Captain

("Capt.") M. Barnes, Deputy Superintendent ("Dep. Supt.") M. Royce, Dep. Supt. L. Malin,

Sergeant ("Sgt.") J. Deckelbaum, Director D. Venettozzi (sued herein as Vennettozzi),

Correction Officer ("C.O.") K. Green, C.O. T. Bowen, C.O. S. Amaro, Sgt. F. Caraballo, C.O. J.

Ayala, C.O. C. Rodriguez, and C.O. L. Merejo.  Plaintiff alleges violations of his Eighth and

Fourteenth Amendment rights.  Plaintiff also brings state law claims for negligence and assault

and battery.

      Now pending is defendants Comm'r Annucci, Supt. Capra, R.N. Young, C.O. Green,

C.O. Bowen, Capt. Barnes, Dep. Supt. Royce, Director Venettozzi, Dep. Supt. Malin, and Sgt.

Deckelbaum's (the "moving defendants") partial motion to dismiss the amended complaint

("AC") pursuant to Rule 12(b)(6).  (Doc. #44).[1]

---

[1]     Defendants Sgt. Caraballo and C.O.s Ayala, Amaro, Rodriguez, and Merjo have not
joined the instant motion or otherwise moved to dismiss the amended complaint.

For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the amended complaint and draws all reasonable inferences in plaintiff's favor, as summarized below.[2]

At all relevant times, plaintiff was incarcerated at Sing Sing Correctional Facility ("Sing Sing") in Ossining, New York.

Plaintiff alleges that on April 6, 2019, C.O. Bowen informed plaintiff he was being transferred to a different cell.  Plaintiff claims that when he asked why he was being moved, C.O. Bowen said he would make a call to find out.  According to plaintiff, shortly thereafter, C.O. Green arrived at plaintiff's cell and told him he was being transferred.  Plaintiff claims he told C.O. Green that C.O. Bowen was making a call on his behalf regarding the move and he had not received any property bags.  In response, C.O. Green allegedly asked plaintiff if he was refusing to move and told plaintiff to "lock back into your cell."  (Doc. #7 ("AC") at ECF 7).[3]

---

[2]     In general, matters outside the pleadings should not be considered "in deciding a motion to dismiss the complaint for failure to state a claim."  Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 202 (2d Cir. 2013).  However, because plaintiff is proceeding pro se, "it is appropriate . . . to consider factual allegations made in [his] opposition papers, so long as the allegations are consistent with the complaint."  Kelley v. Universal Music Grp., 2016 WL 5720766, at *6 (S.D.N.Y. Sept. 29, 2016).  Accordingly, the Court considers allegations made for the first time in plaintiff's opposition to the motion to dismiss and the exhibits annexed thereto.  See Vlad-Berindan v. MTA N.Y.C. Transit, 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014).

[3]     "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

Plaintiff alleges that after he complied with C.O. Green's order to re-enter his cell, Sgt. Caraballo and C.O.s Ayala, Amaro, Rodriguez, and Merjo (the "non-moving defendants") arrived in front of the cell.  Plaintiff claims Sgt. Caraballo signaled for the cell to be opened, and C.O.s Ayala, Amaro, and Rodriguez entered the cell and assaulted him.

According to plaintiff, after the alleged assault, he was taken to the shower where, in plaintiff's presence, Sgt. Deckelbaum told Sgt. Caraballo "he (Deckelbaum) would take care of this situation, because there was no call (emergency response) over the radio to him, and for you (Sgt. Caraballo) to make sure that their stories are straight."  (Doc. #54 ("Opp.") at ECF 21). Plaintiff claims C.O. Green witnessed the non-moving defendants take plaintiff downstairs to the shower.

Plaintiff alleges he was then brought to the Special Housing Unit ("SHU") admission/hearing room, where Sgt. Deckelbaum instructed R.N. Young "to clean [p]laintiff's injuries up before the 'use of force' photographs would be taken of [p]laintiff."  (Opp. at ECF 21).  According to plaintiff, Sgt. Deckelbaum later authorized a search of plaintiff's cell to discard evidence from the alleged beating, including, inter alia, plaintiff's blood-stained sheets. Plaintiff claims after he was placed in SHU, he informed Dep. Supt. Royce that he had been assaulted.

Plaintiff claims he was issued a misbehavior report on April 8, 2019, which alleged various rules violations including:  (i) assault on staff;  (ii) violent conduct; (iii) refusing a direct order; (iv) interference with employee; and (v) movement regulation violation.  According to plaintiff, he met with his tier hearing assistant on April 10, 2019, to prepare for his disciplinary hearing, and gave her a list of relevant documents and requested witnesses.

Plaintiff's disciplinary hearing, conducted by Dep. Supt. Malin, was held on April 12, 2019.  C.O.s Bowen, Green, and Ayala, and R.N. Young allegedly testified during the hearing. Plaintiff claims he requested several inmate witnesses who observed the incident be called to testify, but Malin informed plaintiff that each of his requested witnesses refused to testify. According to plaintiff, when he asked why they refused, Malin stated, "all of the witnesses' refusals are included into the record."  (Opp. at ECF 12).  Plaintiff claims he then asked Malin for "the written reasons for the witnesses who refused to testify" but Malin "informed [plaintiff] that she would not issue to him the written reasons for the witnesses' refusals."  (Id. at ECF 12-13).  According to plaintiff, he then explained to Malin that he needed "the witnesses stated reasons why they refused to testify" for his appeal, but Malin repeated her original statement that "all of the witnesses' refusals forms are included into the record."  (Id. at ECF 13).[4]  Plaintiff further alleges the record does not contain witness refusal forms for two of plaintiff's eight requested witnesses.

Plaintiff claims Malin found him guilty of all charges and imposed a penalty of sixty days of SHU confinement and sixty days loss of privileges on May 5, 2019.  He alleges while in SHU, he (i) "was denied the opportunity to participate in daily recreation exercise for 60 days consecutively while confined in the SHU," (ii) was "prevented from college enrollment due to its disciplinary policies," (iii) was prevented from executing his duties as "Shiite Muslim facilitator," and (iv) was denied Ramadan fasting and Eid celebration meals.  (Opp. at ECF 17–18).

---

[4]     It is unclear whether plaintiff's reference to written reasons the witnesses refused to testify is the same as "witness refusal forms."

Plaintiff states his appeals of the hearing disposition were denied by Director Venettozzi and Dep. Supt. Royce.

## DISCUSSION

I.    Legal Standard

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[5]  First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

The Court must liberally construe submissions of pro se litigants and interpret them "to raise the strongest arguments that they suggest."  Triestman v. Fed. Bureau of Prisons, 470 F.3d

---

[5]       Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

471, 474 (2d Cir. 2006) (per curiam) (collecting cases).  Applying the pleading rules

permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights

violations.  See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008).  "Even in

a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice."  Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir.

2010).  Nor may the Court "invent factual allegations" a plaintiff has not pleaded.  Id.

II.      Official-Capacity Claims against Comm'r Annucci

         Plaintiff sues Comm'r Annucci solely in his official capacity as commissioner of the New

York State Department of Corrections and Community Supervision ("DOCCS").  "[A]s a

general rule, state governments may not be sued in federal court unless they have waived their

Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh

Amendment immunity."  Gollomp v. Spitzer, 568 F.3d 355, 366 (2d Cir. 2009).  "The immunity

recognized by the Eleventh Amendment extends beyond the states themselves to state agents and

state instrumentalities that are, effectively, arms of a state."  Id.  New York has not waived its

Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states'

immunity in enacting 42 U.S.C. § 1983.  See Trotman v. Palisades Interstate Park Comm'n, 557

F.2d 35, 39–40 (2d Cir. 1977).

         Further, although claims brought against state officials in their official capacity pursuant

to Section 1983 for damages are considered suits against the official's office and thus against the

State itself, "official capacity actions for prospective relief are not treated as actions against the

State."  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 n.10 (1989); Ex parte Young,

209 U.S. 123, 159–160 (1908).  Therefore, "a plaintiff may sue a state official acting in his

official capacity—notwithstanding the Eleventh Amendment—for prospective, injunctive relief

from violations of federal law." State Emps. Bargaining Agent Coal. v. Rowland, 494 F.3d 71,

95 (2d Cir. 2007).  "[I]n determining whether the doctrine of Ex parte Young avoids an Eleventh

Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the]

complaint alleges an ongoing violation of federal law and seeks relief properly characterized as

prospective." Verizon Md. Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 636 (2002).  Here,

plaintiff's claims against Comm'r Annucci in his official capacity for monetary and declaratory

relief are retrospective.

Accordingly, plaintiff's claims against Comm'r Annucci must be dismissed.

III.    Eighth Amendment Claims

Liberally construed, the AC alleges two types of deliberate indifference claims:  first, for

constitutionally inadequate medical care, and second, for failure to protect plaintiff against

correction officers with "records of misusing force."  (AC at ¶ 72).

A.    Constitutionally Inadequate Medical Care Claim

The moving defendants argue plaintiff fails plausibly to state a claim for constitutionally

inadequate medical care under the Eighth Amendment.

The Court agrees.

To state a claim for deliberate indifference to serious medical needs, a plaintiff "must

allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious

medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).  This test has an objective prong

and a mens rea prong:  a plaintiff must plausibly allege (i) a "sufficiently serious" inadequacy of

medical care, and (ii) that the officials in question acted with a "sufficiently culpable state of

mind." Salahuddin v. Goord, 467 F.3d 263, 279–80 (2d Cir. 2006).

The objective prong has two subparts.  First, a plaintiff must adequately plead he "was actually deprived of adequate medical care."  Salahuddin v. Goord, 467 F.3d at 279.  Because "the prison official's duty is only to provide reasonable care," prison officials violate the Eighth Amendment only if they fail "'to take reasonable measures' in response to a medical condition." Id. at 279–80 (quoting Farmer v. Brennan, 511 U.S. 825, 847 (1994)).  Second, a plaintiff must plausibly allege "the inadequacy in medical care is sufficiently serious."  Id. at 280.  Courts assess this by examining "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner."  Id.  If the allegedly offending conduct "is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious."  Id.  "Factors relevant to the seriousness of a medical condition include whether a reasonable doctor or patient would find [it] important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain."  Id.

The subjective component requires a showing that defendants were aware of plaintiff's serious medical needs and consciously disregarded a substantial risk of serious harm. Salahuddin v. Goord, 467 F.3d at 280.  "[T]he charged official must act with a sufficiently culpable state of mind."  Id. (citing Wilson v. Seiter, 501 U.S. 294, 300 (1991)).  "To satisfy this prong of the deliberate indifference test, a plaintiff must allege only that the defendant was 'aware of facts' from which one could infer that 'a substantial risk of serious harm' existed, and that the defendant actually drew that inference."  Dotson v. Fischer, 613 F. App'x 35, 38–39 (2d Cir. 2015) (summary order).

Here, plaintiff fails to plead he was deprived of adequate medical care.  Although the AC states R.N. Young failed to provide a follow-up examination for treatment of plaintiff's eye,

bleeding nostril, and bleeding lip, in his opposition to the instant motion, plaintiff claims R.N. Young failed to "'follow up any treatment,' because the male Mental Health nurse and Dr. F. Parker did her job." (Opp. at ECF 27) (emphasis added). Notably, plaintiff does not allege that he was denied any treatment, he merely alleges Young failed to provide a "follow up." Thus, plaintiff fails to allege he was denied treatment for his injuries.

Further, plaintiff's allegations fail to suggest his injuries were sufficiently serious to satisfy the objective prong. Plaintiff alleges he had a "busted eye" that was swollen for two weeks, suffered a laceration under his left eye, and was bleeding out of his right nostril and upper lip. (AC ¶ 113). "District courts in the Second Circuit have consistently held that bruises, lacerations, cuts, black eyes, and other superficial injuries are not sufficiently serious to support a deliberate indifference claim." Morehouse v. Vasquez, 2020 WL 1049943, at *18 (S.D.N.Y. Mar. 4, 2020).[6]

Accordingly, plaintiff's Eighth Amendment deliberate indifference to serious medical needs claim against R.N. Young must be dismissed.

B.    Failure-to-Protect Claim

Liberally construed, the AC alleges Supt. Capra and Dep. Supt. Royce, in their roles as supervisors, failed to protect plaintiff from the danger posed by "[correction] officers with records of misusing force." (AC at ¶ 72). Defendants argue the AC fails plausibly to allege Capra and Royce were personally involved in the alleged constitutional violation.

The Court agrees.

---

[6]    Plaintiff will be provided copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

To adequately state a Section 1983 claim, a plaintiff must "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020) (quoting Ashcroft v. Iqbal, 556 U.S. at 676). Indeed, "a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official." Id. "[T]here is no special rule for supervisor liability." Id. Further, a defendant may not be held liable under Section 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights. See Ashcroft v. Iqbal, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.").

"To state a claim under the Eighth Amendment on the basis that a defendant has failed to prevent harm, a plaintiff must plead both (a) conditions of confinement that objectively pose an unreasonable risk of serious harm to their current or future health, and (b) that the defendant acted with 'deliberate indifference.'" Vega v. Semple, 963 F.3d 259, 273 (2d Cir. 2020). An officer acts with deliberate indifference when he subjectively "has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." Hayes v. N.Y.C. Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996).

Here, plaintiff fails plausibly to allege Supt. Capra and Dep. Supt. Royce were personally involved in the alleged assault or were deliberately indifferent to a serious risk that plaintiff would be harmed by correction officers. Plaintiff's sole allegation as to this claim is that Capra and Royce "failed to act against Defendants F. Caraballo, J. Ayala, S. Amaro, John Doe 'Rodriguez' and John Doe correction officers with records of misusing force that led to excessive force against Plaintiff." (AC ¶ 72). This vague allegation is insufficient to plead Capra or Royce acted with deliberate indifference. Aside from a general reference to "records of misusing

force," (id.) plaintiff pleads no facts suggesting Capra or Royce consciously or recklessly disregarded a serious risk of harm certain correction officers allegedly posed to plaintiff.

Accordingly, plaintiff's failure to protect claim against Supt. Capra and Dep. Supt. Royce must be dismissed.[7]

IV.    Failure-to-Investigate Claim

Plaintiff alleges Capt. Barnes, in his role as a supervisor, is liable for the non-moving defendants' unconstitutional use of excessive force for failing to investigate the alleged assault. This allegation is insufficient to plead Barnes was personally involved in any deprivation of plaintiff's constitutional rights.  "It is well-settled that failure to investigate alleged unconstitutional action does not state a claim under Section 1983." Wingate v. Horn, 2007 WL 30100, at *6 (S.D.N.Y. Jan. 4, 2007), aff'd, 2009 WL 320182 (2d Cir. Feb. 10, 2009).

Accordingly, plaintiff's failure-to-investigate claim against Capt. Barnes is dismissed.

V.    Procedural Due Process Claim

The moving defendants argue plaintiff fails plausibly to allege Dep. Supt. Malin, C.O.s Bowen and Green, R.N. Young, and Director Venettozzi violated his procedural due process rights.

The Court agrees as to C.O.s Bowen and Green, R.N. Young, and Director Venettozzi, but disagrees as to Dep. Supt. Malin.

---

[7]    As an additional matter, defendants argue plaintiff's Eighth Amendment claims should be dismissed on qualified immunity grounds.  The Court does not reach this argument, as plaintiff fails outright to state a plausible Eighth Amendment claim against any of the defendants.

To the extent plaintiff's claims against Comm'r Annucci can be construed as in his individual capacity, any failure-to-protect claim against Comm'r Annucci fails for lack of personal involvement.

A.      Applicable Law

To establish a violation of his procedural due process rights, plaintiff must show "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process."  Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001).

As to the first element, "[a] prisoner's liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline 'imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  Palmer v. Richards, 364 F.3d 60, 64 (2d Cir. 2004) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).  Although there is no bright-line rule for establishing when SHU confinement rises to the level of a constitutional violation, courts consider both the duration and the conditions of confinement.  See id. "[R]estrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection, and thus require proof of conditions more onerous than usual."  Davis v. Barrett, 576 F.3d 129, 133 (2d Cir. 2009) (citing Colon v. Howard, 215 F.3d 227 (2d Cir. 2000)).  Under "normal conditions of SHU confinement" a prisoner is

> placed in a solitary confinement cell, kept in his cell for 23 hours a day, permitted to exercise in the prison yard for one hour a day, limited to two showers a week, and denied various privileges available to general population prisoners, such as the opportunity to work and obtain out-of-cell schooling. Visitors [are] permitted, but the frequency and duration [is] less than in general population. The number of books allowed in the cell [is] also limited.

Colon v. Howard, 215 F.3d at 231.

As to the second element, when an inmate's liberty interest is implicated, "[b]ecause prison disciplinary proceedings are not part of a criminal prosecution, . . . the full panoply of rights due a defendant in such proceedings does not apply."  Williams v. Menifee, 331 F. App'x 59, 60 (2d Cir. 2009).  Rather, a prisoner charged with a violation in a disciplinary proceeding is entitled to "advance written notice of the charges against him; a hearing affording him a

12

reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004).

The Supreme Court has stated an "inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Wolff v. McDonnell, 418 U.S. 539, 566 (1974). However, "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses." Id. "[A] prisoner's request for a witness can be denied on the basis of irrelevance or lack of necessity." Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 (2d Cir. 1991). "[I]f a witness will not testify if called, it cannot be a 'necessity' to call him." Silva v. Casey, 992 F.2d 20, 22 (2d Cir. 1993) (per curiam).

"[T]he due process clause does not require prison officials to state on the record their reasons for denying an inmate's request to confront a particular witness." Freeman v. Rideout, 808 F.2d 949, 953 (2d Cir. 1986). Rather, prison officials can explain their reason for refusing to call certain witnesses "at the hearing, or they may choose to explain it later." Ponte v. Real, 471 U.S. 491, 496 (1985). Moreover, that reason need be only "logically related to preventing undue hazards to 'institutional safety or correctional goals.'" Id. (quoting Wolff v. McDonnell, 418 U.S. at 566). The official denying such a request bears the burden of proving the rationality of his position. Id. at 499.

Finally, "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997).

"There must be more, such as retaliation against the prisoner for exercising a constitutional right." Id.

      B.    <u>Liberty Interest</u>

Plaintiff plausibly alleges the conditions of his sixty-day confinement were atypical and more severe than normal SHU conditions. Specifically, plaintiff claims he "was denied the opportunity to participate in daily recreation exercise for 60 days consecutively while confined in the SHU." (Opp. at ECF 17–18). It is well established that "some opportunity for exercise must be afforded to prisoners." <u>McCray v. Lee</u>, 963 F.3d 110, 117 (2d Cir. 2020). Plaintiff's allegation he was denied one hour of exercise a day implicates a liberty interest and triggers plaintiff's right to due process protections.

      C.    <u>Insufficient Process</u>

Here, plaintiff sufficiently alleges Dep. Supt. Malin, the hearing officer, denied him due process during his April 12, 2019, hearing by failing to explain to plaintiff why his requested witnesses were not permitted to testify. Plaintiff does not, however, plausibly allege any unconstitutional conduct by C.O. Bowen, C.O. Green, R.N. Young, or Director Venettozzi with respect to his due process claim.

As to Dep. Supt. Malin, plaintiff alleges that when he asked Malin why his requested witnesses refused to testify, Malin responded "all of the witnesses' refusals are included into the record" but she refused to provide plaintiff with the written reasons. (Opp. at ECF 12). Plaintiff further claims the record does not contain witness refusal forms for two of plaintiff's eight requested witnesses. As to those witnesses, plaintiff claims "the record contains neither a reason for their alleged refusals to testify, nor evidence that any inquiry was made of them as to why they would not testify." (Id. at ECF 13).

Although due process does not require that plaintiff be provided copies of witness refusal forms or that Dep. Supt Malin personally inquire into the witnesses' reasons for refusing to testify,  see Martinez v. Minogue, 2008 WL 4241746, at *6 (N.D.N.Y. Sept. 11, 2008), Malin was required to explain, in a limited manner, the reason why she did not call plaintiff's requested witnesses.[8]  Plaintiff's allegation that the record lacked witness refusal forms for two of plaintiff's eight requested witnesses is sufficient to allege Malin failed to provide a reason why she declined to call those two witnesses.  The Court recognizes Malin was not required to rely on written refusal forms and she could reasonably have concluded the witnesses refused to testify through other means.  See Silva v. Casey, 992 F.2d at 22 ("[I]f a prison official, presiding over a prison disciplinary hearing, reasonably concludes that it would be futile to call a witness to testify, his refusal to do so will not constitute a violation of the prisoner's constitutional rights[.]").  Nevertheless, Malin's alleged reliance on non-existent witness refusal forms is sufficient to plead she provided no reason for refusing to call those two witnesses.  Thus, plaintiff has plausibly alleged a procedural due process claim as to Dep. Supt. Malin.

As to C.O.s Bowen and Green, and R.N. Young, plaintiff alleges only that he objected to portions of their testimony during the April 12, 2019, hearing.  To the extent plaintiff alleges these defendants provided false testimony, such a claim fails.  As discussed above, inmates have

---

[8]     Plaintiff also argues Dep. Supt. Malin violated his federal procedural due process rights by "violating 7 NYCRR § 254.5(a) and (c)(2) by failing (1) to issue plaintiff the written statements stating the reason for the witnesses whom refused to testify; and (2) when defendant Malin had failed to make an inquiry into why those witnesses refused to testify."  (Opp. at ECF 11-12).  Plaintiff is mistaken.  This is a federal action, and "federal constitutional standards rather than state law define the requirements of procedural due process."  Russell v. Coughlin, 910 F.2d 75, 78 n.1 (2d Cir. 1990).  DOCCS procedures and state procedural rules regarding disciplinary hearings do not form the basis of a due process violation.  See Abdur-Raheem v. Caffery, 2015 WL 667528, at *6 (S.D.N.Y. Feb. 17, 2015) ("There is no indication in Second Circuit or Supreme Court case law that a hearing officer must make an independent evaluation of the basis for the refusal to testify.").

no constitutional right to be free from "false testimony by corrections personnel at prison disciplinary hearings." Thomas v. Calero, 824 F. Supp. 2d 488, 499 (S.D.N.Y. 2011).

And as to Director Venettozzi, plaintiff alleges only that Venettozzi denied plaintiff's appeal of Dep. Supt. Malin's disciplinary determination.  (AC ¶ 110).  Plaintiff pleads no facts suggesting Venettozzi was personally involved in any procedural due process violation.  Indeed, the denial of plaintiff's appeal cannot support the inference that Venettozzi, through "[his] own individual actions, [has] violated the Constitution."  Tangreti v. Bachmann, 983 F.3d at 615 (quoting Ashcroft v. Iqbal, 556 U.S. at 676); see Smart v. Annucci, 2021 WL 260105, at *5 (Jan. 26, 2021) ("[A]ffirming the outcome of a prison hearing [is] not sufficient to establish personal involvement.").[9]

Accordingly, plaintiff's procedural due process claim against Dep. Supt. Malin may proceed.  Plaintiff's procedural due process claim against C.O.s Bowen and Green, R.N. Young, and Director Venettozzi must be dismissed.

VI.     Equal Protection Claim

The moving defendants argue plaintiff fails plausibly to state an equal protection claim against the moving defendants.

The Court agrees.

The Constitution's "equal protection clause directs state actors to treat similarly situated people alike." Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995).  To state a claim under the Equal Protection Clause, a plaintiff must plausibly allege "compared with others similarly

---

[9]     In his opposition, plaintiff alleges his appeals were denied by both Director Venettozzi and Dep. Supt. Royce.  To the extent plaintiff alleges a due process claim against Royce, such claim is also dismissed for failure to plead personal involvement.  See Smart v. Annucci, 2021 WL 260105, at *5.

situated, [he] was selectively treated; and [] that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  LeClair v. Saunders, 627 F.2d 606, 609–10 (2d Cir. 1980).  If a prisoner claims he received different treatment by prison officials because of a protected characteristic, he must "demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination" and that such treatment "was not reasonably related to any legitimate penological interests." Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005).

Here, plaintiff alleges the April 6, 2019, assault was racially motivated because C.O.s Caraballo, Ayala, Amaro, and Rodriquez are Hispanic, and plaintiff is African American.  As for the moving defendants, however, plaintiff does not allege their purported "failure to investigate, report, act, and protect plaintiff, from abusive and racist correction[] officers" (Opp. at ECF 23), was a result of intentional or purposeful discrimination.

Accordingly, plaintiff's equal protection claim against the moving defendants must be dismissed.

VII.   Conspiracy Claim

The moving defendants argue plaintiff has failed to allege an actionable conspiracy claim arising under Section 1983.

The Court agrees as to Capt. Barnes and C.O.s Green and Bowen, but disagrees as to Sgt. Deckelbaum.

To state a conspiracy claim under Section 1983, a plaintiff must plausibly allege "(1) an agreement between [two or more state actors or] a state actor and a private party; (2) to act in

concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal

causing damages." Ciambriello v. County of Nassau, 292 F.3d 307, 324–25 (2d Cir. 2002).

"Given the relative ease with which conspiracy allegations may be brought, and the

substantial disruption of governmental function that they can cause, a claimant is required to

furnish more than conclusory allegations to avoid dismissal of a claim predicated on a conspiracy

to deprive [the claimant] of his constitutional rights." Powell v. United States, 2020 WL

5126392, at *9 (S.D.N.Y. Aug. 31, 2020).  And although "[a] plaintiff is not required to list the

place and date of defendants['] meetings and the summary of their conversations when he pleads

conspiracy . . . the pleadings must present facts tending to show agreement and concerted

action." Concepcion v. City of New York, 2008 WL 2020363, at *3 (S.D.N.Y. May 7, 2008).

Here, plaintiff adequately alleges Sgt. Deckelbaum knew of and agreed to act in concert

with other defendants to cover up the alleged assault.  First, plaintiff alleges Deckelbaum told

Sgt. Caraballo that he would "take care of the situation" and directed Caraballo "to make sure

that their stories [were] straight."  (Opp. at ECF 21).  Second, plaintiff alleges Deckelbaum

directed R.N. Young to clean plaintiff's injuries prior to the "use of force photographs" that were

taken to document the alleged assault.  (Id.).  Third, plaintiff alleges Decklebaum authorized a

search of plaintiff's cell to discard evidence from the alleged beating, including, inter alia,

plaintiff's blood-stained sheets.  At the pleading stage, these allegations plausibly allege an

agreement between Deckelbaum and Caraballo to cover up the alleged assault and actions of

Deckelbaum in furtherance of that goal.  See Randle v. Alexander, 960 F. Supp. 2d 457, 475

(S.D.N.Y. 2013) ("[A]ny agreement to effectuate such a fight or cover-up is an 'act in concert to

inflict an unconstitutional injury' as required by the law."); Hill v. City of New York, 2005 WL

3591719, at *5 (E.D.N.Y. Dec. 30, 2005) ("Given that a jury may rationally infer that the

defendant officers participated in a conspiracy to cover-up unconstitutional acts, summary judgment is not appropriate on [the] plaintiff's conspiracy claim."). [10]

But as to Capt. Barnes and C.O.s Green and Bowen, plaintiff fails plausibly to allege they were personally involved in the alleged assault or cover up.  Regarding C.O. Green, plaintiff alleges Green "witnessed all of the defendants tak[ing] plaintiff downstairs[,] . . . followed the rest of the defendants downstairs, [] witnessed plaintiff being placed in the shower[,] . . . and looked plaintiff directly in his face with an expression of shock."  (Opp. at ECF 21).  As to Capt. Barnes, plaintiff alleges Barnes interviewed C.O.s Green and Bowen, informed them of the contents of plaintiff's grievance, and "held up the investigation of [p]laintiff's grievance."  (AC ¶¶64–65, 76).  Plaintiff also alleges C.O.s Green and Bowen made false statements during plaintiff's disciplinary hearing.  (Id. ¶ 68).  These allegations are insufficient to "support[] a meeting of the minds, such that [Capt. Barnes, and C.O.s Green and Bowen] entered into an agreement, express or tacit, to achieve the unlawful end."  See Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009).

---

[10]     The Court recognizes some district courts in this circuit that have concluded inmates have no constitutional right to be free from the cover-up of a completed constitutional violation.  See Alvarez v. City of New York, 2012 WL 6212612, at *4 (S.D.N.Y. Dec. 12, 2012) (dismissing claim for conspiracy to "cover up" excessive force because plaintiff did not allege injury), Tavares v. City of New York, 2011 WL 5877550, at *9 (S.D.N.Y. Oct. 17, 2011) (recommending conspiracy claim be dismissed because allegations defendants agreed to cover-up alleged assault are analyzed as claim for denial of access to the courts and plaintiff failed to allege injury), report and recommendation adopted, 2011 WL 5877548 (S.D.N.Y. Nov. 23, 2011); Lewis v. Havernack, 2013 WL 1294606, at *13 (N.D.N.Y. Mar. 28, 2013) (recommending conspiracy claim regarding cover-up be dismissed because "there is no constitutional right to be free from the cover-up of a past constitutional violation"), report and recommendation adopted, 2013 WL 1294592 (N.D.N.Y. Mar. 28, 2013).  Absent briefing from the parties on this case law, the Court is not persuaded plaintiff has failed to allege an unconstitutional injury.

The moving defendants also argue that to the extent plaintiff plausibly alleges a conspiracy claim, that claim is barred by the intracorporate conspiracy doctrine.  The moving defendants are mistaken.  "[U]nder the intracorporate conspiracy doctrine, officers, agents and employees of a single corporate entity are legally incapable of conspiring together." Hartline v. Gallo, 546 F.3d 95, 99 n.3 (2d Cir. 2008) (citing Herrmann v. Moore, 576 F.2d 453, 459 (2d Cir. 1978) ).  However, "[a]n exception to the doctrine exists where a plaintiff alleges facts that tend to show the defendants were pursuing personal interests wholly separate and apart from the entity." Harris v. City of Newburgh, 2017 WL 4334141, at *8 (S.D.N.Y. Sept. 27, 2017).  For that exception to apply, a plaintiff must plausibly allege the defendants "acted other than in the normal course of their corporate duties," id. (quoting Girard v. 94th St. & Fifth Ave. Corp., 530 F.2d 66, 72 (2d Cir. 1976)), "maintain[ing] the pretense of serving the state while in fact pursuing their own ends to avoid liability," Alvarez v. City of New York, 2012 WL 6212612, at *3 (S.D.N.Y. Dec. 12, 2012).

Here, plaintiff plausibly alleges Sgt. Deckelbaum and the non-moving defendants acted outside "the normal course of their corporate duties" by using excessive force and then agreeing to cover up the alleged assault by manipulating or destroying evidence.  Harris v. City of Newburgh, 2017 WL 4334141, at *8 (quoting Girard v. 94th St. & Fifth Ave. Corp., 530 F.2d at 72).  Employing excessive force and manipulating or destroying evidence are not core functions performed in the normal course of a correction officer's duties.  Further, plaintiff alleges a plausible "personal interest" for defendants' alleged conspiratorial conduct—covering up the alleged incident—plausibly indicating they acted in their personal interests, not Sing Sing's or DOCCS's.  See Lewis v. Havernack, 2013 WL 1294606, at *13.

Thus, accepting plaintiff's allegations as true at this early stage of the case, the Court

finds plaintiff adequately pleads Sgt. Deckelbaum acted outside the scope of his employment and

in his own personal interest when he allegedly agreed to and acted in furtherance of covering up

the alleged assault, rendering the intracorporate conspiracy doctrine inapplicable.  See Lewis v.

Havernack, 2013 WL 1294606, at *13 (finding intracorporate conspiracy doctrine inapplicable

because prison official defendants allegedly covered up excessive force); Hill v. City of New

York, 2005 WL 3591719, at *6 (finding intracorporate conspiracy doctrine inapplicable because

police officer defendants allegedly covered up excessive force).

Accordingly, plaintiff's conspiracy claim against Capt. Barnes and C.O.s Green and

Bowen must be dismissed.  Plaintiff's conspiracy claim against Sgt. Deckelbaum may proceed.

VIII.   Qualified Immunity

The moving defendants argue Sgt. Deckelbaum and Dep. Supt. Malin are entitled to

qualified immunity.

The Court disagrees.

A.      Applicable Law

Qualified immunity shields government officials whose conduct "does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known."

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The scope of qualified immunity is broad, and

it protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v.

Briggs, 475 U.S. 335, 341 (1986).  "Defendants bear the burden of establishing qualified

immunity."  Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015).

"The issues on qualified immunity are: (1) whether plaintiff has shown facts making out

violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3)

even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013).  Also relevant to a defense of qualified immunity is whether the defendant is alleged to have been personally involved in the alleged constitutional violation "because it goes to the question of whether a defendant's actions violated a clearly established right." Iqbal v. Hasty, 490 F.3d 143, 153 (2d Cir.2007), rev'd on other grounds, 556 U.S. 662 (2009) (citing McCullough v. Wyandanch Union Free Sch. Dist., 187 F.3d 272, 280 (2d Cir.1999)).

"[A] defendant asserting a qualified immunity defense on a motion to dismiss faces a formidable hurdle and is usually not successful." Barnett v. Mount Vernon Police Dep't, 523 F. App'x 811, 813 (2d Cir. 2013) (summary order). "The defense will succeed only where entitlement to qualified immunity can be established based solely on the facts appearing on the face of the complaint." Id.  "For these reasons, a motion to dismiss is a mismatch for immunity and almost always a bad ground of dismissal." Id.

    B.    Sgt. Deckelbaum

The moving defendants argue Sgt. Deckelbaum is entitled to qualified immunity because the allegations of supervisory liability against him "are conclusory and fail to specify [his] personal involvement in any alleged wrongdoing." (Doc. #45 at ECF 28).  However, as discussed above, plaintiff has sufficiently alleged Sgt. Deckelbaum's personal involvement in the alleged conspiracy to cover up the non-moving defendants' use of excessive force.

Moreover, defendants do not argue Sgt. Deckelbaum is entitled to qualified immunity for the conduct giving rise to plaintiff's conspiracy claim.  As noted above, defendants bear the burden of establishing qualified immunity. Garcia v. Does, 779 F.3d at 92.  Indeed, defendants must "demonstrate that the *specific acts at issue* were performed within the scope of their official

duties." Shechter v. Comptroller of City of New York, 79 F.3d 265, 270 (2d Cir. 1996) (emphasis in original). At this stage, defendants have failed adequately to raise the affirmative defense of qualified immunity as to Sgt. Deckelbaum.

Accordingly, the Court finds that a grant of qualified immunity for Sgt. Deckelbaum at this time is not warranted. If appropriate, the qualified immunity argument as to Deckelbaum, may be raised at summary judgment.

        C.      Dep. Supt. Malin

With respect to Dep. Supt. Malin, plaintiff sufficiently alleges Malin violated his clearly established constitutional right to procedural due process by failing to disclose the reason she did not call two of plaintiff's eight requested witnesses. Indeed, it is well-established that prison inmates have a right to a reasonable opportunity to call witnesses and present documentary evidence. See, e.g., Sira v. Morton, 380 F.3d at 69. If a requested witness is not called to testify, the official must, either as part of the administrative record or by presenting testimony in court, explain his or her reason for refusing to allow the requested witness to testify. See Ponte v. Real, 471 U.S. at 497.

Moreover, it is not clear from the face of the amended complaint that Dep. Supt. Malin's conduct was objectively reasonable under the circumstances.

Accordingly, the Court finds that a grant of qualified immunity for Dep. Supt. Malin at this time is not warranted. If appropriate, the qualified immunity argument as to Malin may be raised at summary judgment.

IX.     State Law Claims

Liberally construed, plaintiff asserts state law claims of assault and battery against defendants Supt. Capra, Dep. Supt. Royce, Capt. Barnes, Sgt. Deckelbaum, and C.O.s Green,

and Bowen, and negligence against R.N. Young.  The moving defendants argue plaintiff's state law claims of negligence and assault and battery as against the moving defendants must be dismissed.

The Court agrees.

New York Correction Law § 24, provides "[n]o civil action shall be brought in any court of the state . . . against any officer or employee of [the New York Department of Corrections and Community Supervision ("DOCCS")] . . . in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee."  Section 24 thus "confer[s] upon [DOCCS employees] an immunity from liability for activities that fall within the scope of the statute." Baker v. Coughlin, 77 F.3d 12, 15 (2d Cir. 1996).  Accordingly, "[c]ourts in the Second Circuit have long held that Section 24 precludes a plaintiff from raising state law claims in federal court against state employees in their personal capacities for actions arising within the scope of their employment."  Davis v. McCready, 283 F. Supp. 3d 108, 123–24 (S.D.N.Y. 2017) ("[U]nder Section 24, any tort claim arising under New York law against Defendant must be dismissed for lack of subject matter jurisdiction.").

Here, plaintiff's allegations do not suggest the moving defendants were acting outside the scope of their employment during any of the occurrences which give rise to his state law claims.

Accordingly, any state law claims against the moving defendants must be dismissed.

**CONCLUSION**

The partial motion to dismiss is GRANTED IN PART and DENIED IN PART.

Plaintiff's Fourteenth Amendment procedural due process claim against Dep. Supt. Malin and conspiracy claim against Sgt. Deckelbaum shall proceed.  All other claims against the moving defendants are dismissed.

By March 22, 2021, Dep. Supt. Malin, Sgt. Deckelbaum, and the non-moving defendants shall file an answer.

By separate order, the Court will schedule an initial conference in this matter.

The Clerk is instructed to terminate Comm'r Annucci, Supt. Capra, R.N. Young, C.O. Green, C.O. Bowen, Capt. Barnes, Dep. Supt. Royce, and Director Venettozzi as defendants in this action.

The Clerk is further instructed to terminate the motion.  (Doc. #44).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Chambers will mail a copy of this Opinion and Order to plaintiff at the address on the docket.

Dated:  March 8, 2021
        White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge