

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
BYRON K. BROWN,
                Plaintiff,       :

v.                              :      **OPINION AND ORDER**

F. CARABALLO, J. AYALA, S. AMARO, L.   :     19 CV 9048 (VB)
MALIN, J. DECKELBAUM, CARLOS J.    :
RODRIGUEZ, and LERVIS MEREJO,      :
                Defendants.   :
------------------------------------------------------------x

Briccetti, J.:

    Plaintiff Byron K. Brown, proceeding pro se and in forma pauperis, brings claims under

42 U.S.C. § 1983 and state law claims for assault and battery against defendants Sergeant

("Sgt.") F. Caraballo; Sgt. J. Deckelbaum; Correction Officer ("C.O.") J. Ayala; C.O. S. Amaro;

C.O. Carlos J. Rodriguez; C.O. Lervis Merejo; and Deputy Superintendent ("Dep. Supt.") Lesley

F. Malin.  Plaintiff's claims arise out of the alleged use of excessive force against him on April 6,

2019, the subsequent disciplinary hearings, and an alleged cover-up, in violation of the Eighth

and Fourteenth Amendments.

    Now pending is defendants' motion for partial summary judgment.  (Doc. #77).[1]

    For the following reasons, the motion is GRANTED.

    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

    The parties have submitted briefs, statements of material facts pursuant to Local Civil

Rule 56.1, and declarations with exhibits, which together reflect the following factual

background.

---

[1]    Sgt. Caraballo, C.O. Ayala, C.O. Amaro, and C.O. Rodriguez have not moved for
summary judgment on plaintiff's excessive force or state law assault and battery claims.

On April 6, 2019, while he was incarcerated at Sing Correctional Facility, plaintiff was involved in a violent altercation with certain defendants inside his jail cell, including C.O. Ayala and C.O. Amaro.  Plaintiff is Black, and C.O. Ayala and C.O. Amaro are of Hispanic descent.

The altercation began after plaintiff questioned why he was being asked to pack his things and move to another location in the facility.  At that point, another C.O. stationed at the "lock box"—the facility's remote cell control area—opened plaintiff's cell door remotely.  C.O. Ayala and C.O. Amaro then entered plaintiff's cell, and an altercation ensued in which the C.O.s used force, including a headlock, to restrain plaintiff.

Later, Sgt. Caraballo prepared a "Use of Force" memorandum regarding the altercation, based on his conversations with the C.O.s involved in the incident.  Sgt. Caraballo also prepared an "Inmate Misbehavior Report" charging plaintiff with violating several prison rules.

Beginning on April 12, 2019, Dep. Supt. Malin conducted a month-long hearing regarding the Inmate Misbehavior Report.  During the hearing, plaintiff requested that eight witnesses—primarily inmates in the cells adjacent to plaintiff—testify on his behalf.  Dep. Supt. Malin stated each witness refused to do so, either because they did not observe the incident, could not recall the incident, or could not recall plaintiff himself.  Dept. Supt. Malin further explained she personally spoke with two of the eight requested witnesses, and the legal assistant assigned to assist plaintiff in the disciplinary proceeding spoke to each of the eight requested witnesses.  Six of the eight requested witnesses signed written "refusal forms" stating they would not testify.

Dep. Supt. Malin ultimately determined plaintiff was guilty of the charges set forth in the Inmate Misbehavior Report and ordered him confined to the facility's Special Housing Unit for sixty days.

On April 17, 2019, plaintiff filed a grievance regarding the April 6 altercation. The grievance described the altercation as an assault by the C.O.s—instigated by Sgt. Caraballo and other unidentified C.O.s—and an improper use of excessive force. The grievance noted "Sergeant F. Caraballo had filed several false reports falsifying documents attempting to mislead and coverup this assault from prison officials." (Doc. #8-10 at ECF 2).[2]

Plaintiff thereafter commenced the instant lawsuit, asserting claims against several named defendants as well as several unidentified defendants, including the then-unidentified C.O. who opened plaintiff's cell door. In response to a <u>Valentin</u> order (Doc. #30), defense counsel identified the latter John Doe defendant as C.O. Merejo. (Doc. #39).

The pertinent factual dispute with respect to the instant motion is the alleged cover-up of the altercation by Sgt. Deckelbaum and Sgt. Caraballo.[3]

Plaintiff testified at his deposition that, immediately after the incident, he was escorted to the shower area of the facility, at which point Sgt. Deckelbaum told Sgt. Caraballo to "just make sure they have their stories right. I will take care of the rest." (Doc. #89-1 ("Brown Tr.") at 41). According to plaintiff, Sgt. Deckelbaum then refused to permit "use of force" pictures to be taken of plaintiff's injuries until after his injuries were cleaned up and treated by the facility's nurse.

---

[2]     ECF "__" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

[3]     The parties also dispute how the altercation itself unfolded, including the number of C.O.s involved and whether plaintiff or one of the C.O.s instigated the altercation in the first place. Those disputes pertain to the excessive force claim that will go to trial, and are not pertinent to the resolution of this motion.

Sgt. Caraballo, in contrast, states in a sworn statement that he never discussed getting stories straight at all and that he and Sgt. Deckelbaum followed the conventional protocol regarding providing medical care and taking use of force pictures.

## DISCUSSION

I.    Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).[4]

A fact is material when it "might affect the outcome of the suit under the governing law. . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010). It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party fails to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 322–23. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50. The

---

[4]    Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011).  The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury reasonably could find for him.  Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party.  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor on the issue on which summary judgment is sought, summary judgment is improper.  Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).

However, bald assertions, completely unsupported by admissible evidence, are not sufficient to overcome summary judgment.  Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

Although courts must afford a pro se litigant special solicitude on a motion for summary judgment and read his submissions "to raise the strongest arguments that they suggest," such solicitude "does not relieve [a] plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." Jorgensen v. Epic/Sony Recs., 351 F.3d 46, 50 (2d Cir. 2003).

II.    Conspiracy Claim

Sgt. Deckelbaum, Sgt. Caraballo, C.O. Ayala, C.O. Amaro, and C.O. Rodriguez argue plaintiff's conspiracy claim against them must be dismissed because plaintiff failed to exhaust his administrative remedies with respect to the conspiracy claim, and, in any event, does not raise a genuine issue of material fact that there was an agreement to commit a constitutional violation.

The Court disagrees with respect to the exhaustion argument, but agrees on the merits of the conspiracy claim.

A.    Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions under [Section 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

For a New York State prisoner to exhaust his administrative remedies, he must comply with the three steps of New York's Inmate Grievance Program, the first of which is submitting a grievance with the relevant prison authorities. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5. The allegations in a grievance need not "articulate legal theories," but they must "provide[ ] enough information to alert the prison to the nature of the wrong for which redress [was] sought" and "afford time and opportunity for the State to address the complaint internally." Espinal v. Goord, 558 F.3d 119, 127 (2d Cir. 2009). Accordingly, a plaintiff need not "assert[ ] in his grievance the existence of a conspiracy" to exhaust his administrative remedies with respect to any conspiracy claim. See id. at 127–28.

Here, plaintiff's April 17, 2019, grievance supplies "enough information to alert the prison to the nature" of an alleged conspiracy to cover up the use of excessive force against plaintiff. Espinal v. Goord, 558 F.3d at 127. That is, the grievance states "Sergeant F. Caraballo, had filed several reports falsifying documents attempting to mislead and cover up this assault from prison officials." (Doc. #80-10 at ECF 2). When read in the context of the other allegations in the grievance, particularly that Sgt. Caraballo acted in concert with a group of C.O.s in instigating the altercation in the first place, plaintiff's allegations of a "cover-up" by

Sgt. Caraballo raise the reasonable inference that Sgt. Caraballo acted in concert with the other

C.O.s with respect to the cover-up as well.

Accordingly, plaintiff exhausted his conspiracy claim, and the Court may address the

conspiracy claim on the merits.[5]

B.    Merits of Conspiracy Claim

Sgt. Deckelbaum, Sgt. Caraballo, C.O. Ayala, C.O. Amaro, and C.O. Rodriguez argue the

conspiracy claim nevertheless fails as a matter of law.

The Court agrees.

> To prove a [Section 1983] conspiracy, plaintiff must show:  (1) an agreement
> between two or more state actors or between a state actor and a private entity;
> (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done
> in furtherance of that goal causing damages.

Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999).

Here, even if it is genuinely disputed that defendants conspired to cover up the alleged

excessive force against plaintiff,[6] the Court concludes plaintiff has not raised a triable issue of

fact that any such conspiracy inflicted an independent constitutional injury, such as a denial of

access to the courts or a deprivation of due process.  See Patterson v. Patterson, 2019 WL

---

[5]    Defendants do not dispute plaintiff otherwise complied with and exhausted the applicable administrative remedies.

[6]    The record arguably evinces a factual dispute that Sgt. Deckelbaum and Sgt. Caraballo conspired to cover up the alleged use of excessive force.  That is, a rational juror could infer an agreement to cover up the use of excessive force from plaintiff's deposition testimony that Sgt. Deckelbaum directed Sgt. Caraballo to "make sure [the remaining defendants] have their stories straight" and that Sgt. Deckelbaum would "take care of the rest."  (Brown Tr. at 41).  A rational juror could also infer an "overt act" in furtherance of the cover-up conspiracy from Sgt. Deckelbaum's alleged refusal to allow plaintiff to be examined until after he was showered and cleaned up by the facility's nurse, thereby masking the severity of plaintiff's injuries.

1284346, at *10 (W.D.N.Y. Mar. 20, 2019).[7]  This is because "[t]here is no constitutional right to be free from the cover-up of a past constitutional violation."  Id.

Accordingly, the conspiracy claim must be dismissed.

III.    Due Process Claim Against Dep. Supt. Malin

Dep. Supt. Malin argues plaintiff fails to raise a genuine issue of material fact that the refusal to call plaintiff's requested witnesses deprived him of due process.

The Court agrees.

"[T]o present a due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process."  Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001).  "[T]he interest of prisoners in disciplinary procedures is [ ] included in that 'liberty' protected by the Fourteenth Amendment."  Wolff v. McDonnell, 418 U.S. 539, 556–57 (1974).  Denial of the right to call a witness in a disciplinary hearing is a violation of due process.  See Patterson v. Coughlin, 761 F.2d 886, 890 (2d Cir. 1985).

"Prison officials must have the necessary discretion to keep the hearing within reasonable limits."  Wolff v. McDonnell, 418 U.S. at 566.  Accordingly, a hearing officer does not violate due process by excluding irrelevant or unnecessary testimony.  Kalwasinski v. Morse, 201 F.3d 103, 109 (2d Cir. 1999) (per curiam).  However, the hearing officer must have a "rational basis" for concluding testimony would be irrelevant or unnecessary.  Id.  Moreover, state disciplinary procedures require that "[i]f permission to call a witness is denied, the hearing officer shall give the inmate a written statement stating the reasons for the denial."  N.Y. Comp. Codes R. & Regs. tit. 7, § 253.5(a).

---

[7]      Plaintiff will be provided copies of all unpublished opinions cited in this decision.  See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

Here, Dep. Supt. Malin's refusal to call plaintiff's requested witnesses indisputably had a "rational basis." Namely, each witness refused to testify because they said they had no knowledge of the incident. Indeed, the disciplinary hearing transcript reflects that Dep. Supt. Malin explained to plaintiff that plaintiff's own legal assistant in the disciplinary hearing spoke to each of the requested witnesses, and plaintiff confirmed during his deposition that Dep. Supt. Malin indeed explained to plaintiff the reason for those witnesses' refusal to testify. See Parra v. Fischer, 2012 WL 3069952, at *6 (W.D.N.Y. July 27, 2012) (hearing officer entitled to rely on representations made by inmate's legal assistant in disciplinary proceeding regarding assistant's conversations with requested witnesses).

Plaintiff insists that Dept. Supt. Malin "fabricated" his requested witnesses' reasons for refusing to testify. However, the only evidence plaintiff offers in support of this position is the fact that Dept. Supt. Malin informed plaintiff of the witnesses' refusal to testify on May 2, 2019, but several of the written refusal forms signed by the witnesses are dated May 8, 2019. Absent additional evidence of misconduct on the part of Det. Supt. Malin, this purported discrepancy amounts to no more than a scintilla of evidence insufficient to generate the factual dispute necessary to survive summary judgment.

Plaintiff also points out defendants have not produced written refusals for two of his eight requested witnesses, but "it is hardly clear that this [apparent] violation of the state disciplinary procedures amounts to a deprivation of constitutional due process, especially where there is no indication that [the witnesses] would have testified at all, let alone provided testimony favorable to [plaintiff]." Rodriguez v. Ghoslaw, 2001 WL 755398, at *10 (S.D.N.Y. July 5, 2001).

Accordingly, the due process claim against Dep. Supt. Malin must be dismissed.

IV.    Equal Protection Claim

Sgt. Caraballo, C.O. Ayala, C.O. Amaro, and C.O. Rodriguez argue plaintiff's equal protection claim against them must be dismissed because plaintiff cannot demonstrate selective treatment based on his race as a matter of law.

The Court agrees.

The "equal protection clause directs state actors to treat similarly situated people alike." Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995). To avoid summary judgment, a plaintiff must raise a genuine issue of material fact that he was subject to "selective treatment . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." LeClair v. Saunders, 627 F.2d 606, 609–10 (2d Cir. 1980).

If a prisoner claims he received different treatment by prison officials because of a protected characteristic, he must "demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination" and that such treatment "was not reasonably related to any legitimate penological interests." Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005).

Here, the only evidence plaintiff marshals in support of selective treatment on the basis of his race is the fact that he is Black and his alleged attackers are Hispanic. It is well settled that without additional evidentiary support—such as comments reflecting racial bias, or a pattern of one race being treated differently than another—such conclusory allegations cannot raise a triable issue as to racial bias to support an equal protection claim. See, e.g., Bradshaw v. City of New York, 2017 WL 6060781, at *14 (S.D.N.Y. Dec. 7, 2017) ("[I]t is hornbook law that the mere fact that something bad happens to a member of a particular racial group does not, without

more, establish that it happened because the person is a member of that racial group"), aff'd sub

nom. Bradshaw v. Hernandez, 788 F. App'x 756 (2d Cir. 2019) (summary order).

Accordingly, the equal protection claim must be dismissed.

V.     Claims Against C.O. Merejo

C.O. Merejo argues plaintiff's claims against him must be dismissed because plaintiff

does not raise a triable issue of fact as to C.O. Merejo's personal involvement in any alleged

constitutional violation.

The Court agrees.

"It is well settled in this Circuit that personal involvement of defendants in alleged

constitutional deprivations is a prerequisite to an award of damages under § 1983." Spavone v.

N.Y. State Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir. 2013).

Here, plaintiff asserts excessive force and conspiracy claims against C.O. Merejo for

allegedly opening plaintiff's cell to enable the other defendants to enter and attack.  However,

plaintiff testified at his deposition that he had never seen C.O. Merejo before and he could be

dismissed from the case.  (Brown Tr. at 77–78).  In light of this testimony and the Court's

independent review of the record, the Court agrees there is no evidence C.O. Merejo was

personally involved in any alleged constitutional violation in this case.

Moreover, the Court agrees that even if C.O. Merejo was indeed the C.O. who opened

plaintiff's cell from the remote control center, plaintiff fails to adduce any evidence from which a

rational juror could infer C.O. Merejo knew an assault would follow, or that he had an

opportunity to intervene in the alleged attack.  See Gillard v. Rosati, 2011 WL 4402131, at *9

(N.D.N.Y. Aug. 22, 2011) (mere fact that defendant opened plaintiff's cell door insufficient to

raise a triable issue regarding personal involvement in alleged assault absent evidence regarding motive), report and recommendation adopted, 2011 WL 4344061 (N.D.N.Y. Sept. 14, 2011).

Accordingly, all claims against C.O. Merejo must be dismissed.

## CONCLUSION

The motion for partial summary judgment is GRANTED.

Plaintiff's conspiracy, due process, and equal protection claims are DISMISSED.

All claims against C.O. Merejo are also DISMISSED.

The Court will conduct a case management conference on **October 6, 2022, at 9:30 a.m.,** at which time the parties shall be prepared to discuss, among other things, the setting of a trial date and a schedule for pretrial submissions, as well as what efforts they have made and will make to settle this case.

The conference shall proceed by telephone. At the time of the scheduled conference, plaintiff and defense counsel shall use the following information to connect by telephone:

**Dial-In Number: (888) 363-4749 (toll free) or (215) 446-3662;**

**Access Code: 1703567.**

It is defense counsel's responsibility to make prior arrangements with the appropriate facility to make plaintiff available by telephone for the conference.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate defendants J. Deckelbaum, Lervis Merejo and L. Malin from this action, and to terminate the motion. (Docs. ##77, 87).

Chambers will mail a copy of this Opinion and Order to plaintiff at the address on the

docket.

Dated: September 6, 2022
       White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge